20-945-cv
*Jackson v. Harvest Capital Credit Corp.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 9th day of March, two thousand twenty-one.

Present:
> DEBRA ANN LIVINGSTON,
> > *Chief Judge*,
> DENNY CHIN,
> JOSEPH F. BIANCO,
> > *Circuit Judges*.

_____

ROSS JACKSON, THE GARY A. ZEBROWSKI LIVING TRUST, by Gary A. Zebrowski, Trustee,

> *Plaintiffs-Appellants*,

> v.                                                     20-945-cv

HARVEST CAPITAL CREDIT CORPORATION, fka Harvest Capital Credit, LLC,

> *Defendant-Appellee*,

CHRISTALS ACQUISITION, LLC,

> *Defendant*.

_____

For Plaintiffs-Appellants:          Yelena Graves, Strongin, Rothman & Abrams, LLP, New York, NY; John A. Hutchings, Dill Dill Carr Stronbraker & Hutchings, P.C., Denver, CO.

1

For Defendant-Appellee:                 S. Wade Malone, Lucas A. Westby, Peter L. Munk, Nelson Mullins Riley & Scarborough LLP, Atlanta, GA.

Appeal from a judgment of the United States District Court for the Southern District of New York (Keenan, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiffs Ross Jackson and the Gary A. Zebrowski Living Trust (together, "Plaintiffs") appeal from a judgment of the district court granting summary judgment in favor of Defendant Harvest Capital Credit Corporation ("Harvest") in their contract dispute. The district court held that the Subordination Agreement (the "Agreement") between Plaintiffs and Harvest terminated pursuant to a Netting Transaction in which Harvest received approximately $1.5 million in cash and $2 million in new debt. Plaintiffs contend that the Netting Transaction did not suffice to terminate the Agreement and that Harvest's actions allowing the debtor to take on new senior debt therefore constituted a breach. We assume the parties' familiarity with the facts, the procedural history of the case, and the issues on appeal, which we set forth here only insofar as necessary to explain our decision to **AFFIRM**.

\*      \*      \*

Review of a district court's grant of summary judgment is *de novo*. *Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001). Further, the Agreement dictates it will be governed by New York law. Under New York law, "a written agreement that is complete, clear, and unambiguous on its face must be [interpreted] according to the plain meaning of its terms" without reference to extrinsic evidence. *Law Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 467–68 (2d Cir. 2010) (alteration in original) (quoting *Greenfield v. Philles Recs., Inc.*, 98 N.Y.2d 562,

2

569 (2002)). Here, we agree with the district court that the Agreement is unambiguous with respect to the relevant provisions. The question, then, is whether the plain meaning of its text permitted the Netting Transaction to terminate the Agreement. For the reasons that follow, we agree with the district court that it did.

Plaintiffs once owned a series of stores selling entertainment and novelty products that, on October 9, 2012, they sold to Christals Acquisition, LLC ("Christals"). To complete this transaction, Christals entered into a Securities Purchase Agreement with Harvest and the entities Christals was purchasing pursuant to which Harvest purchased a promissory note worth approximately $4.6 million and made an advance of approximately $3.1 million to Christals. Harvest and Christals also entered into a Security Agreement by which Harvest took a security interest in all of Christals' and the acquired entities' property. As relevant here, Harvest and Plaintiffs entered into the Agreement, which governed the relationship between Plaintiffs' unsecured subordinate debt and Harvest's secured senior debt. The Agreement had two relevant provisions: Section 4(b), which limited the amount of further senior debt that Christals could incur, and Section 16, which specified that the Agreement would terminate upon "the indefeasible payment in full in cash" of Harvest's senior debt. J. App'x at 87, 91.

Plaintiffs claim that the Agreement was breached in December 2012 when Peekay SPA, LLC (a wholly owned subsidiary of Peekay Acquisition, LLC, itself a wholly owned subsidiary of Christals) entered into a deal by which it acquired all of the issued and outstanding common stock of two additional companies also involved in the business of owning and operating retail stores selling entertainment and novelty products. This transaction, in which Harvest participated, was financed by loans totaling approximately $38 million. At the time, Christals still owed approximately $3.2 million to Harvest. Rather than repay Harvest directly in cash, after which

3

Harvest would then immediately reinvest in the new acquisition, the parties agreed to the "Netting Transaction" pursuant to which Harvest received approximately $1.5 million in cash and $2 million in new debt that was part of the approximately $38 million in new loans. In tandem, Harvest released its security interest on Christals' assets.

Plaintiffs claim the Netting Transaction did not suffice to terminate the Agreement, permitting Christals to take on new debt, because Harvest was not paid in cash, and instead was repaid in a mix of cash and new debt.[1] The district court, however, held that the Netting Transaction properly terminated the Agreement and granted summary judgment in favor of Harvest. We agree with the district court.

Plaintiffs' expert admitted that were Christals to pay Harvest in cash that was immediately re-routed to Christals in exchange for new debt, this would not result in a breach. Here, Harvest argues that rather than accept payment in cash and then immediately reroute it into the new investment, incurring transaction costs along the way, it was allowed to "net out" the two transactions for the sake of efficiency. Under New York law, contracts should be interpreted to produce commercially reasonable results. *See Lipper Holdings, LLC v. Trident Holdings, LLC*, 1 A.D.3d 170, 171 (1st Dep't 2003) ("A contract should not be interpreted to produce a result that is absurd, commercially unreasonable or contrary to the reasonable expectations of the parties." (citations omitted)). Given that the minimization of transactions costs is commercially reasonable, Plaintiffs' argument essentially asks us to read into the contract a supplemental requirement that Harvest must incur these unnecessary costs in the service of a purpose not apparent from the text the parties negotiated. New York law, however, does not permit us to "fashion a new contract

---

[1] Plaintiffs also advance a new theory that a breach of a contract may not be used to terminate the contract. We agree with Harvest, however, that Plaintiffs waived this argument by not raising it in the district court.

under the guise of contract construction." *Slatt v. Slatt*, 64 N.Y.2d 966, 967 (1985). We therefore conclude that the district court did not err in determining that Harvest was entitled to summary judgment.

<div align="center">*     *     *</div>

We have considered Plaintiffs' remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

<div style="margin-left: 50%;">
FOR THE COURT:<br>
Catherine O'Hagan Wolfe, Clerk
</div>